UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CATHY ZEE ANDERSON, as personal representative of the Estate of Donald S. Goldberg,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 2:24-cv-01737-JAD-EJY

**REPORT AND RECOMMENDATION**

## I.   Introduction

The court has before it Plaintiff's Motion for Leave to File Amended Complaint (the "Motion to Amend" or the "Motion"), which was filed on October 3, 2025, more than five months before the close of discovery on February 27, 2026.[1]  ECF No. 23.  The Court considered the Motion and Opposition thereto.  ECF No. 28.  Plaintiff did not file a Reply.

Although this is Plaintiff's first request to amend the Complaint, the Motion was filed four and one-half months after the last agreed upon deadline to amend pleadings expired in May 2025.  ECF 17 at 3:12.[2]  Plaintiff's Motion is silent with respect to "good cause" for the extension, which

---

[1]   Cathy Zee Anderson, as personal representative of the estate of Donald S. Goldberg, is referred to herein as "Plaintiff" or the "Estate."  However, when discussing Cathy Zee Anderson's request to amend the Complaint to assert a claim as a plaintiff in her individual capacity, she is referred to as "Ms. Anderson."

[2]   This matter is one of four cases pending in the Court arising from a July 17, 2022 fatal collision between two aircraft at the North Las Vegas Airport.  These matters include the instant action, Case No. 2:24-cv-1737-JAD-EJY, brought by the Estate, and Case Nos. 2:24-cv-1484-JAD-EJY (*Chiaramonti v. United States),* 2:24-cv-1490-JAD-EJY (*Tidwell v. United States*), and 2:24-cv-1896-JAD-EJY (*Dale v. United States*).  These four matters were consolidated for purposes of discovery.  *Tidwell* at ECF No. 34; *Dale* at ECF No. 10.

An extension of discovery appears in *Tidwell* at ECF No. 30 (entered Sept. 9, 2025); however, this extension did *not* include an extension of the date by which amendments to pleadings or adding parties could be filed.  *Id*.  A more recent extension of discovery, filed in *Dale* at ECF No. 27 (entered Dec. 16, 2025), also did *not* include an extension of the date by which parties could amend pleadings or add parties.  *Id*.  The last date by which the parties agreed they could amend pleadings or add parties appears in the case at bar.  ECF No. 17 at 3.

The court enters scheduling orders "to establish deadlines to foster the efficient treatment and resolution of cases."  *Wong v. Regents of the University of California*, 410 F.3d 1052, 1060 (9th Cir. 2005).  The court's management efforts are "successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines."  *Id*. at 1061.  Courts establish discovery plans and scheduling orders "to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to."  *Id.* at 1062.

is required under Federal Rule of Civil Procedure 16(b)(4) and Local Rule ("LR") 26-3. The Motion is also silent with respect to excusable neglect, which is required under LR 26-3 when, as is true here, the request is made after the at-issue deadline has lapsed. LR 26-3.

Notwithstanding the failure to address good cause and excusable neglect, the Estate's Motion discusses the standard for amendment under Fed. R. Civ. P. 15(a)(2) and what are often referred to as the *Foman* factors establishing that, generally, leave to amend may be denied when there is a showing of bad faith, undue delay, futility, or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Ninth Circuit case law demonstrates prejudice is the most important factor for the court to consider. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The Estate argues granting the Motion will cause no prejudice to the United States ("Defendant") because discovery is ongoing, no extension of discovery will be needed, and Defendant has been on notice of the type and amount of damages sought since the Estate submitted its administrative claim.[3] Plaintiff says there is no bad faith, no dilatory motive, futility or failure to cure prior deficiencies in pleadings; thus, leave should be granted.

Importantly, Plaintiff submits the proposed amendments are not futile because the Estate "is not adding any additional claims; the proposed complaint still asserts a single claim for relief based on the negligence of the FAA[, and t]he factual basis of Defendant's negligence remains unchanged." ECF No. 23 at 5. Plaintiff cites NRS 41.085 for the proposition that "Nevada law permits wrongful death claims to be maintained by heirs as well as personal representatives of a decedent's estate." *Id*. Plaintiff further argues the amendment "merely clarifies" the claims the proposed plaintiffs seek to bring and that these claims are in "harmony with the categories of damages sought in the previously-submitted Form 95." *Id*.

Defendant argues the administrative claim process under the Federal Tort Claims Act (the "FTCA" or the "Act") is jurisdictional and provides no exceptions to the exhaustion requirement. Citing Ninth Circuit precedent, Defendant argues "strict adherence" to the procedural process is

---

[3] Before filing its claim in federal court, the Estate was required to file a Standard Form-95 (SF-95). *See Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) *quoting* 28 U.S.C. § 2675(a) ("an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted administrative remedies.").

required and "complete exhaustion" must be satisfied before bringing suit. ECF No. 28 at 8-9. Defendant points to the administrative claim (SF-95) filed in this case that was completed only by the Estate of Donald S. Goldberg and argues there was "no mention of … individual claims" or "that the decedent had sons." *Id*. at 9; *see also* ECF No. 28-2. Defendant further demonstrates the destroyed aircraft did not belong to the Estate, but to a separate company (Gold Aero Aviation, LLC (sometimes "GAA")), which did not submit an administrative claim. ECF No. 28 at 2. As for Ms. Anderson's request to be added as an individual plaintiff, in addition to her appearance as the Estate's representative, Defendant distinguishes the decision in *Dale*, *supra* at n.2, and argues strict adherence to exhaustion precludes this request.[4] *Id*. at 10. Finally, Defendant discusses the Estate's failure to address good cause and excusable neglect, that neither the Estate nor the proposed individual plaintiffs have standing to pursue a claim on behalf of GAA, and the Estate's efforts to increase the amount of damages for pain and suffering from that which was indicated on the SF-95 is unwarranted because such damages were foreseeable. *Id*. at 11-24.

## II.    Overview of the Law

### a.    The Amendment Standard.

Federal Rule of Civil Procedure allows for amendment to a complaint as a matter of right under 15(a)(1)—which is not applicable here—and either through stipulation or leave of court under 15(a)(2).[5] Rule 15(a)(2) establishes leave should be granted "when justice so requires." As stated in *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1152 (9th Cir. 2011), "[l]eave to amend … generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party …." *Id. citing Foman*, 371 U.S. at 182) (additional internal citations omitted.). Prejudice is the "touchstone" of the Rule 15(a) analysis and, therefore, receives the greatest weight. *Eminence*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original).

---

[4]    The court's decision in *Dale* is available on Westlaw at 2025 WL 1918112 (D. Nev. July 10, 2025).
[5]    In all cases that do not fall under Fed. R. Civ. P. 15(a)(1), a party seeking to amend a pleading may only do so "with the opposing party's written consent or the court's leave." *Id*. 15(a)(2).

b.       Good Cause and Excusable Neglect Requirements.

Federal Rule of Civil Procedure 16(b)(4) allows extensions to a court's scheduling order "only for good cause and with the judge's consent."  District of Nevada LR 26-3 states: "A motion … to extend any date set by the discovery plan, scheduling order, or other order must … be supported by a showing of good cause for the extension."  The "good cause standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quote marks omitted).  To meet the burden established by Rule 16's good cause standard, the moving party may be required to show: (1) she "was diligent in assisting the [c]ourt in creating a workable Rule 16 order" …; (2) "that … her noncompliance with a Rule 16 deadline occurred … notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference" …; and (3) "that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (internal citations omitted).  In sum, a district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609.  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  …  If that party was not diligent, the inquiry should end." *Id.* (citation omitted).

After the deadline for amendment has passed, which is the case here, "a party seeking to effectively reopen and extend the filing date[] must establish the failure to timely act was the result of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B); LR 26-3. When considering whether Plaintiff demonstrates excusable neglect, the court examines four factors: "(1) danger of prejudice to the opposing party; (2) length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (internal citation and quotation marks omitted); *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993).

**III.    Discussion**

      a.    <u>Exhaustion Under the FTCA Applied to Jeffrey and Kenneth Goldberg.</u>

Ninth Circuit precedent establishes the FTCA "waives the sovereign immunity of the United States for certain torts committed by federal employees 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Vacek*, *supra*, 447 F.3d at 1250 (citing *Smith v. United States*, 507 U.S. 197, 201 (1993), quoting 28 U.S.C. § 1346(b)).  As stated above, before a claim for money damages may be filed in federal court under the Act, a plaintiff must exhaust mandatory administrative procedures.  *Id.* quoting 28 U.S.C. § 2675(a).  The court in *Vacek* stated: "We have repeatedly held that the exhaustion requirement is jurisdictional in nature and must be interpreted strictly …."

> This is particularly so since the [Act] waives sovereign immunity.  Any such waiver must be strictly construed in favor of the United States.  Section 2675(a) establishes explicit prerequisites to the filing of suit against the Government in district court.  It admits of no exceptions.  Given the clarity of the statutory language, we cannot enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit.

*Id.* quoting *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992) (alteration in original).  The decision in *Vacek* makes clear that the court is "not allowed to proceed in the absence of fulfillment of the [jurisdictional] conditions merely because dismissal would visit a harsh result upon the plaintiff."  *Id.* citing *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979).

FTCA exhaustion, when applied to Jeffrey and Kenneth Goldberg, yields a clear, albeit a harsh result.  Neither of these individuals—Donald Goldberg's sons and Ms. Anderson's brothers—filed an SF-95 before seeking to be added as plaintiffs in this litigation.  A review of all of the documents provided to the court relating to the Estate's filing of its administrative claim shows no mention of either Jeffrey or Kenneth Goldberg—indeed no mention that decedent had sons.  ECF No. 28-2 at 1-33.  These facts are undisputed.  Indeed, the Estate raises no contrary allegation in its Motion; and the Estate filed no Reply to Defendant's Opposition.

When Jeffrey and Kenneth's failure to file SF-95s is considered together with (1) the undisputed fact that neither is mentioned anywhere in the administrative claim submitted to

Defendant, (2) there is no supporting documentation evidencing Defendant had any reason to know either son was asserting an individual FTCA claim, (3) the Motion to Amend was filed four and one-half months after the time within which to amend pleadings had lapsed (ECF No. 17 at 3), and (4) the Estate failed to mention, let alone address, good cause and excusable neglect in its moving papers, the court finds the Estate's Motion seeking to amend its Complaint to add Jeffrey and Kenneth Goldberg as plaintiffs must be denied.

b.    The Motion Seeking to Add Ms. Anderson in Her Individual Capacity is Denied Because She Failed To Exhaust Her Individual Capacity Claim; Her Circumstances are Distinguishable Under *Dale*; and Neither Good Cause Nor Excusable Neglect are Established.

i.    *Ms. Anderson did not exhaust her individual capacity claim.*

Ms. Anderson did not file an SF-95 before seeking to be added to this dispute in her individual capacity. This is confirmed by a review of all documents relating to the administrative claim that were submitted to Defendant. ECF No. 28-2. As stated in *Vacek*, the court is "not allowed to proceed in the absence of fulfillment of the [jurisdictional] conditions merely because dismissal would visit a harsh result upon the plaintiff." 447 F.3d at 1250 (internal citation omitted).

ii.    *The court's decision in Dale is distinguishable.*

Although not mentioned by the Estate in its moving papers, Defendant raises the recent decision in *Dale*, 2025 WL 1918112. The undisputed facts show that when Scott Dale filed his complaint against the government in federal court, he sued in his individual capacity as well as the executor of his mother's estate. *Id*. at *1. The government then moved to dismiss Dale's individual capacity claim based on the failure to exhaust. *Id*. Thus, unlike the case at bar, the court in *Dale* was not presented with an untimely motion to amend.

In its motion to dismiss Dale's individual claim, the government pointed to *Johnson v. United States*, 704 F.2d 1431 (9th Cir. 1983). *Id*. at *2. Johnson was seriously injured "in a car accident with an Air Force Sergeant" after which he filed an FTCA claim seeking $3.5 million. *Id. citing Johnson*, 704 F.2d at 1433. Johnson listed his wife in the administrative claim, but only he signed the claims form. *Id. citing id*. When Johnson filed his claim in federal court, he sought $3 million for his injuries and $500,000 for loss of consortium suffered by his wife. *Id*. The district court

dismissed his wife's claim finding she failed to exhaust her claim under the FTCA. *Id*. The Ninth Circuit upheld the decision noting Johnson was the only signatory on the SF-95 and, despite listing his wife as his spouse, there was no loss of consortium claim raised. *Id*. *citing id*. at 1444.

In response to the government's motion to dismiss, Dale argued "that his request for $50 million in damages should have provided notice that he was seeking individual damages, since that amount far exceeds what could be collected by the estate for medical and funeral expenses." *Id.* at *2. Dale pointed to Nevada law under which an award of pain and suffering damages may only be granted to heirs of an estate, while the estate itself may recover for medical and funeral expenses. *Id*. *citing* NRS 41.985(4), (5) respectively.[6] Dale submitted that given this statutory limits on types of damages, his $50 million pain and suffering damages claims "should have provided notice" of his individual claim as this amount far exceeded what his mother's estate could collect for medical and funeral expenses. *Id.*

After considering all of the facts and law presented, the court found the facts in *Dale* were distinguishable from those in *Johnson*. *Id*. at *3. Noting that Dale signed the SF-95 form using his own name, the category of damages available to an estate and heirs of an estate, and that Dale sought $50 million in pain and suffering, the court found Dale provided the government with notice of his individual claim. *Id*. at 3. The court stated the failure to identify himself as the son of the decedent did not "dictate a different result." *Id*. The court reasoned: "[i]t was evident from the sum certain and the request for pain-and-suffering damages that Dale sought more than what was permitted if he were proceeding merely as the … estate's representative" and, thus, "gave the government sufficient notice that he sought relief as an heir and as the … estate's representative." *Id*.

Here, Ms. Anderson was not named as a plaintiff in the original Complaint. ECF No. 1. In fact, that Complaint defines Ms. Anderson solely as the personal representative of the Estate. *Id*. at 1. In the instant Motion, the Estate again defines the "Plaintiff" as Cathy Zee Anderson in her capacity as the personal representative of the Donald S. Goldberg estate. ECF No. 23 at 1. Further, unlike *Dale*, the Estate presents nothing suggesting, let alone arguing, that Ms. Anderson signed the

---

[6]    Where state law has limited the damages recoverable in tort, the Ninth Circuit court has imposed that limit on FTCA claims. *Taylor v. U.S.*, 821 F.2d 1428, 1430 (9th Cir. 1987); *Richards v. United States*, 369 U.S. 1, 16 (1962).

SF-95. *See id*., *generally*. The court's review of documents submitted with the Estate's administrative claim are contrary to the conclusion that she did so. *Compare* 28-2 at 1 *and* 28-2 at 8. Further, at the same time the SF-95 was submitted to Defendant, the Estate submitted an engagement letter in which the law firm made clear it was retained by Ms. Anderson "to represent … [her] father's estate." ECF No. 28-2 at 10. Letters Testamentary submitted to Defendant also represent Ms. Anderson is appointed as the personal representative of the Estate. *Id*. at 6.

With respect to damages, the Estate's SF-95 form seeks $1 million for property damages, $250,000 in personal injury, and $1,750,000 in damages for wrongful death. *Id*. at 1. The wrongful death claim is substantially smaller than the $50 million wrongful death claim asserted in *Dale*. *Compare* ECF No. 28-2 at 1 and 2:24-1896-JAD-EJY, ECF No 13-1 at 2. The Estate does not argue its wrongful death damages put the government on notice that Ms. Anderson was proceeding in her individual capacity or that the amount claimed in "wrongful death" was so great that it would necessarily exceed medical and funeral expenses. ECF No. 23, *generally*. Instead, the Estate concludes that Defendant "has been on notice of the types and amounts of" damages since the SF-95 was submitted. *Id*. at 3. The Estate further states it seeks to file an amended complaint "in an abundance of caution … [and] to ensure harmony with Nevada statutory authority regarding wrongful death damages" which appears as an attempt to bootstrap one of the arguments in *Dale* into the effort to amend, but adds no argument or effort to explain this statement. *Id*. at 4 *citing* NRS 41.085.

Unlike the facts in *Dale*, the totality of the facts available to Defendant at the time the Estate filed its SF-95 are not evident of a "sum certain" signaling the form, signed only on behalf of the Estate, and not by Ms. Anderson, sought damages for Ms. Anderson as an heir in her individual capacity. Even granting that Nevada's statutory scheme does not allow for pain and suffering to be awarded to the Estate, the totality of the information, like that which was present in *Johnson* and unlike the facts in *Dale*, did not give Defendant notice that Ms. Anderson was proceeding in her individual capacity for any type of damages. At the risk of redundancy, not only did Ms. Anderson not sign the SF-95 form, she is not mentioned in the SF-95; the documents in which her name appears states only that she is a representative of the Estate; and the amount demanded for pain and suffering

8

and wrongful death, in light of all other information available, was not so great as to provide Defendant sufficient notice that she was asserting an individual capacity claim. For all of these reasons, when applied to the law as stated by the Ninth Circuit in *Vacek*, the court recommends denying the Estate's Motion to add Ms. Anderson as a plaintiff in her individual capacity.

> iii.     *Even if the SF-95 provided notice of Ms. Anderson's individual capacity claim, the Motion should be denied because the Estate does not demonstrate good cause or excusable neglect for its untimely request to extend a scheduling order deadline.*

There is no legitimate dispute that the last day to amend pleadings and add parties was agreed upon by the parties and approved by the court only in a stipulation filed in this case at ECF No. 17 (granted at ECF No. 19). This stipulation established May 23, 2025 as the last day to amend pleadings and add parties. ECF No. 17 at 3. Two subsequent stipulations to extend deadlines set in the consolidated cases were silent with respect to amendment of pleadings and adding of parties. *Tidwell* at ECF No. 30 (entered Sept. 9, 2025); *Dale* at ECF No. 27 (entered Dec. 16, 2025). Nonetheless, citing to the *Tidwell* extension, the Estate argues that because discovery was extended to February 27, 2026, the deadline to amend pleadings was automatically extended through application of LR 26-1(b)(2). ECF No. 23 at 5. The Estate offers no support for the contention that there is an automatic extension of deadlines not addressed in a stipulation, and the court found none. Indeed, if this were the case there would be no need to discuss excusable neglect after a deadline passed so long as another deadline, which had not passed, sought to be extended. For example, applying the Estate's argument, if parties submitted a stipulation stating an intent to extend a discovery deadline more than 21 days before that deadline expired, but after the deadline to disclose experts expired, the expert disclosure deadline would be automatically extended by the discovery deadline extension even if the submitted stipulation did not seek such extension. This interpretation would nullify the "excusable neglect" language of LR 26-3 and is rejected by the court. Generally, case law establishes that courts must not interpret language appearing in statutes so as to render language found in those or other statutes meaningless. *Hauser v. Hites Enterprises, Inc.*, Case No. 2:18-cv-01043-JAD-BNW, 2020 WL 10576361, at *2 (D. Nev. Mar. 31, 2020) *citing In re Matter of George J.*, 279 P.3d 187, 190 (Nev. 2012). Further, "[c]ourts must also 'interpret a rule or statute in harmony with other rules and statutes.'" *Id. citing id.*

9

Plaintiff's Motion to Amend was filed on October 3, 2025, long after the May 2025 deadline to amend had passed. Despite clear and well established law, the Estate claims "[t]his Motion is undeniably timely …." ECF No. 23 at 5. This faulty assertion is compounded by the Estate's failure to mention good cause for amending the scheduling order and excusable neglect for the untimely filing. ECF No. 23. Rule 16(b)(4), of the Federal Rules of Civil Procedure, and LR 26-3 require "good cause" for an extension of a deadline set by the court's scheduling order. The Ninth Circuit has long held, "good cause standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. In the absence of diligence, the Court's inquiry into good cause ends. *Id.*

While Ms. Anderson may not have been able to reasonably foresee that Mr. Goldberg may have initially survived the crash and fought to safely land his aircraft at the time the scheduling order was originally agreed upon,[7] this does not explain why Ms. Anderson did not file an SF-95, name herself as a plaintiff in the original Complaint, or address why she waited until October 2025 to seek to add herself as an individual claimant. In the absence of any support for a finding of diligence offered by the Estate in its Motion, and given its failure to file a reply, the court finds diligence has not been demonstrated and further analysis of good cause is not needed.

Finally, even if the Estate established diligence, there is also no discussion of excusable neglect. *Id*., *generally*. The Estate says Defendant has known "the types and amounts of … damages since the" SF-95 was filed, totally ignoring that Defendant never received an SF-95 from Ms. Anderson. *Id*. at 3-4. The Estate never mentions the reason for its untimely Motion only unilaterally concluding the addition of Ms. Anderson will "simply make the operative pleading in this case more closely mirror the complaints in the other [consolidated] actions." *Id*. at 3. Given that two of the three other complaints consolidated with the Estate's matter were filed before the instant action, and each demonstrates SF-95s were filed on behalf of individual claimants who are named plaintiffs (*Chiaramonti*, at ECF No. 1 and *Tidwell*, at ECF No. 1), this argument does not support a finding of excusable neglect. The court finds the Estate does not address, let alone meet the standard for excusable neglect, which independently requires denial of the Motion to Amend.

---

[7]    *See* ECF No. 23 at 6-7.

c.       The Estate Seeks To Increase Its Property Loss Claim, But Is Not The Owner Of The Property Rendering The Increase Futile.

For reasons that are not explained, the instant Motion seeks to increase the claim for property damage—the total destruction of the Piper Malibu aircraft flown by Mr. Goldberg at the time of the crash—but does not seek to add the owner of the aircraft, Gold Aero Aviation, as a plaintiff. ECF No. 23, *generally*. The Estate does not dispute that GAA is the owner of the destroyed aircraft as the Estate did not respond to Defendant's Opposition demonstrating this fact through FAA documentation. ECF No. 28 at 5 *citing* 28-3 at 1. The Estate does not explain how it, or any proposed individual plaintiff, could seek recovery of the value of an aircraft they do not own. The Estate also does not explain how it could assert a claim on behalf of GAA under the FTCA given that GAA did not file and is not mentioned in the SF-95 submitted by the Estate; nor did it file its own SF-95 claim. *Vacek.*, 447 F.3d at 1250 (and citations therein).

As Defendant explains, "[t]he FAA requires aircraft to be registered in the legal name of the owner. 14 C.F.R. § 47.5(b)."[8] *Id*. at 19. The assertion that Mr. Goldberg was the sole member of GAA does not save the Estate's argument because Nevada law makes clear that "[a] member of a limited-liability company is not a proper party to proceedings by or against the company, except where the object is to enforce the member's right against or liability to the company." NRS 86.381.

Based on the foregoing, the court recommends denying the Estate's Motion seeking to file an amended complaint to increase the amount of the property damages claimed.

d.       Nevada Law Establishes Only Heirs of the Estate May be Granted Pain and Suffering Damages.

Nevada Revised Statutes establish pain and suffering awards in a wrongful death action may only be awarded to the heirs of an estate. NRS. NRS 41.985(4). The Estate cites to what it terms newly discovered evidence to argue in favor of an increase in such damages. The court finds that even assuming the evidence regarding the decedent's potential survival post-initial crash is newly discovered, amendment to increase these damages is futile. As discussed above, only an individual heir, not an estate, may recover pain and suffering damages. The individual heirs in this case did

---

[8] This code section states: "An aircraft may be registered only by and in the legal name of its owner."

11

not file SF-95 forms.  There is no basis for allowing Jeffrey or Kenneth's claims to proceed.  The court further discusses above why Ms. Anderson's individual claim cannot proceed.  In the absence of an individual heir to the Estate, the court finds an increase in damages sought for pain and suffering arising out of this wrongful death action cannot proceed.  Thus, the court finds the request to increase the amount of damages sought is futile and should be denied.

**IV.     Recommendation**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 23) be DENIED.

Dated this 28th day of January, 2026.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

Under Local Rule IB 3-2, any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court holds the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  The Ninth Circuit also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).